**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ELBERT GARNER, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| OFFICER KINNAN, OFFICER WHITAKER, | ) | |
| OFFICER JONES, and | ) | |
| THE VILLAGE OF UNIVERSITY PARK. | ) | |
|     Defendants. | ) | |

**COMPLAINT**

NOW COMES the Plaintiff, ELBERT GARNER, by and through his attorney, John C. Greenlees, Ltd. and complaining against the Defendants OFFICER KINNAN, OFFICER WHITAKER, OFFICER JONES, and THE VILLAGE OF UNIVERSITY PARK states:

INTRODUCTION

1. This action is brought seeking damages as redress for Defendants' violation of the Plaintiffs' rights enumerated under the Fourth and Fourteenth Amendments to the Constitution of the United States of America, which violations resulted from the Defendants' unlawful and unauthorized seizure and detention of the plaintiff, and seizure of his United State's Currency which caused the Plaintiff significant and severe damages, including personal and pecuniary injuries.

JURISDICTION AND VENUE

2. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. Sec.1331 and Sec.1343(a)(3) as the Federal Claims are brought under 42 U.S.C. Sec.1983 and venue pursuant to 28 U.S.C. Sec.1391(b) as the majority of parties reside in this district and the events giving rise to the claims occurred in this district.

THE PARTIES

3. On August 14, 2010 the Plaintiff, Elbert Garner, a citizen of this country, enjoyed all rights and entitlements enumerated in the Constitution of the United States of America and all Amendments thereto.

4. The Defendant, Officer Kinnan was a duly sworn peace officer under the laws of the State of Illinois possessed of law enforcement authority under Illinois law, and at all relevant times set forth herein was acting under color of law and within the scope of his employment with the Village of University Park. Defendant Officer Kinnan is sued in his individual capacity. Upon information and belief, the Defendant resides in Cook County, Illinois.

5. The Defendant, Officer Whitaker was a duly sworn peace officer under the laws of the State of Illinois possessed of law enforcement authority under Illinois law, and at all relevant times set forth herein was acting under color of law and within the scope of her employment with the Village of University Park. Defendant Officer Whitaker is sued in her individual capacity. Upon information and belief, the Defendant resides in Cook County, Illinois.

6. The Defendant, Officer Jones was a duly sworn peace officer under the laws of the State of Illinois possessed of law enforcement authority under Illinois law, and at all relevant times set forth herein was acting under color of law and within the scope of his employment with the Village of University Park. Defendant Officer Jones is sued in his individual capacity. Upon information and belief, the Defendant resides in Cook County, Illinois.

7. The Defendant, Village of University Park was a municipal corporation organized and chartered under the laws of the State of Illinois, obligated to indemnify employees for judgments resulting from conduct occurring within the scope of employment and employing unknown police officers or police personnel herein. It is responsible for the policies, procedures, and

practices implemented through its various agencies, agents, departments and employees and for injury occasioned thereby. It was also the public employer of Defendants Kinnan, Whitaker, and Jones.

## STATEMENT OF FACTS

8.     On or about August 14, 2010 at approximately 6:15am Defendants Kinnan and Whitaker were dispatched to the area of Blackhawk and University Parkway in reference to an alleged shooting victim whereupon they encountered plaintiff Elbert Garner who was determined to be the victim of the possible shooting.

9.     Defendant Whitaker made contact with plaintiff Garner and obtained medical aid in the form of Fire Department rescue personnel for him in relation to his injuries.

10.    Defendant Whitaker was thereafter attacked by an unrelated individual who was also on the scene.

11.    Defendants Kinnan and Whitaker, without probable cause or reasonable or articulable suspicion to believe that defendant had committed a crime or violation of law, took plaintiff Garner into physical custody, restricting his freedom, and forcibly transported him to the police department.

12.    Plaintiff Garner was searched after being taken into custody and $1,491.00 in United State's currency was taken from his person and possession and seized and thereafter held by the defendants.

13.    Defendants Whitaker and Kinnan's acts interfered with plaintiff's possessory interest in his United State's currency.

14.    Without probable cause or reasonable or articulable suspicion to believe that defendant had committed a crime, defendants continued to hold and detain plaintiff in custody, where he

was interrogated by Defendant Jones. Plaintiff was not free to leave and was not allowed to leave the police station.

15. Defendants conspired and agreed to unlawfully hold plaintiff in custody in order to obtain a statement from him to use against the unrelated third person who had attacked Defendant Whitaker while plaintiff was being treated by rescue personnel. Plaintiff had not injured, threatened, or attacked Defendant Whitaker and the defendants had no probable cause, nor reasonable or articulable suspicion that plaintiff was in any way involved in the third person's attack on Defendant Whitaker.

16. Defendant Jones interrogated Plaintiff, while he was held in custody and not free to leave, regarding the $1,491 in United State's Currency (USC) in his possession. Defendant Jones demanded explanations for how plaintiff came to possess the currency and continued to unlawfully hold defendant in custody, interrogating him about the currency.

17. Plaintiff informed Defendants that he had been attacked and shot at by an individual and that he had committed no crime. Defendants had no probable cause nor reasonable or articulable suspicion to believe Plaintiff had committed any crime. Defendants had no probable cause nor reasonable or articulable suspicion to believe that the USC in plaintiff's possession was obtained illegally or was contraband.

18. Upon releasing plaintiff without any criminal charges, Defendants agreed and conspired to seize and otherwise exercise control over plaintiff's $1,491 USC.

19. Defendants refused to return plaintiff's $1,491 USC to him, thereby interfering with his possessory interest in that property.

20. When plaintiff complained, defendants agreed, jointly, severally, and in conspiracy with one another, without probable cause or reasonable or articulable suspicion to believe that the

USC was contraband or subject to forfeiture, to seize the funds and claim, without evidence, that they were subject to forfeiture.

21. Defendants continued to exercise unlawful control over the plaintiffs property (the $1,491 USC) and instituted forfeiture proceedings which they knew to be false, without probable cause, and without basis in fact or law.

22. Plaintiff was forced to hire counsel to obtain the return of his property (the $1,491 USC) and thereafter file a Motion to Dismiss, alleging inter alia that there was no probable cause, nor any evidence, nor facts, nor any presumption under any statute, that the USC was subject to seizure.

23. On December 12, 2011, fully 16 months after seizing plaintiff's property without probable cause or articulable or reasonable suspicion, the Hon. Joseph Polito granted plaintiff's motion and dismissed the defendant's forfeiture complaint, ordering the return of his property.

COUNT I
FOURTH AMENDMENT VIOLATION
UNLAWFUL DETENTION AND SEIZURE 42 U.S.C. Sec. 1983

24. Plaintiff incorporates herein paragraphs 1 – 23 above as though fully set forth herein.

25. At all relevant times herein, the Plaintiff enjoyed and possessed a right under the Fourth Amendment to the Constitution of the United States to be free from unreasonable searches and seizures and to be secure in his person, effects and property, including freedom from the unlawful arrest or detention.

26. On August 14, 2010 Defendants seized the plaintiff's person, restricting his movement, and taking him into custody without probable cause or reasonable or articulable suspicion to believe he had committed any crime.

27. Defendant's only information was that plaintiff had been the victim of a shooting.

Defendants had no direct or indirect evidence or facts from which to conclude or believe that plaintiff had committed any crime or violation of law.

28. As described above, the conduct of Defendants was intentionally carried out, for several hours of detention, under color of law and within the scope of their employment, with willful, wanton, reckless disregard, and/or deliberate indifference to the rights of the Plaintiff, and constituted a violation of the Fourth Amendment.

29. Defendants agreed and conspired between themselves to hold plaintiff in custody, without probable cause or reasonable and articulable suspicion, and in violation of his rights, for their own improper purposes unrelated to any belief or information that plaintiff had committed any crime.

30. As the proximate result of the unlawful seizure and detention of the plaintiff by the defendants, the Plaintiff has suffered and continues to suffer injuries of a personal and pecuniary nature.

WHEREFORE the Plaintiff demands judgment against Defendant Caratachea for compensatory and punitive damages, costs incurred herein and attorney fees, in a sum in excess of $20,000.00.

COUNT II
FOURTH AMENDMENT VIOLATION
UNLAWFUL SEIZURE AND DEPRIVATION OF PROPERTY
42 U.S.C. Sec. 1983

31. Plaintiff incorporates herein paragraphs 1 – 23 above as though fully set forth herein.

32. At all relevant times herein, the Plaintiff enjoyed and possessed a right under the Fourth Amendment to the Constitution of the United States to be free from unreasonable seizure of, and interference with his possessory right to, his property.

33. On or about August 14, 2010 Defendants effected the unlawful seizure of his property, to

wit $1,491 in USC, without lawful authority in the form of probable cause or reasonable or articulable suspicion, or other factual or legal justification in that defendants asserted that the USC was contraband, or subject to seizure under the laws of the State of Illinois.

34. Defendants asserted, without factual or legal justification, that there was a presumption of probable cause that justified their seizure of plaintiff's property pursuant to 725 ILCS 150/7. No such presumption exists under the facts as known to the defendants, as was found by the Circuit Court of Will County, the Hon. Joseph Polito, in 10 MR 1076. Defendants knew that they had no facts to trigger, or meet, any legal presumption of probable cause.

35. Defendants knew of no facts or circumstances that would lead them to believe that the USC was subject to seizure or forfeiture.

36. Defendants did not believe Plaintiff's explanation – though none should have been required – where he obtained the USC. Defendant's disbelief – their unsupported "hunch" that the USC was somehow connected to illegal activity – was completely unsupported by any facts or circumstances which would constitute probable cause, or reasonable or articulable suspicion.

37. Defendants agreed together, and acted jointly and in concert with one another, for their own benefit, to seize plaintiff's property and attempt, without lawful justification, to keep it for the use of their department, in violation of the constitution.

38. Plaintiff had a tangible property interest in the $1,491 USC, that was taken from his person by the defendants.

39. Defendants interfered with this tangible property interest in that they meaningfully interfered with plaintiff's possessory interest in his property by taking it from him and refusing to return it until order to do so by the Court some 16 months after improperly seizing it.

40. Plaintiff, who was not charged with a crime, nor suspected of a crime, but who was in

fact the victim of an offense purportedly being "investigated" by the defendants, was thereafter forced to hire counsel solely to obtain the return of his property which was unlawfully seized by the defendants without legal justification.

41. At all times relevant herein, Defendants were acting under color of law and their individual conduct as described hereinabove was done with willful, wanton, reckless disregard, and/or deliberate indifference to the rights of the Plaintiff.

42. Defendants' individual acts, and the acts which they agreed to as co-conspirators, violated Plaintiff's right to be free from unreasonable seizure of his property, as provided in the Fourth Amendment to the United States Constitution and caused Plaintiff to suffer pecuniary damages and legal expenses as alleged herein.

WHEREFORE the Plaintiff demands judgment against Defendants for compensatory and punitive damages, costs incurred herein and attorney fees, in a sum in excess of $ 20,000.00.

COUNT III
42 U.S.C. Sec. 1983 VIOLATION
VILLAGE OF UNIVERSITY PARK
(MONELL LIABILITY)

43. Plaintiff incorporates herein paragraphs 1 – 23 above as though fully set forth herein.

44. At all relevant times herein, the Plaintiff enjoyed and possessed a right under the Fourth Amendment to the Constitution of the United States to be free from unreasonable seizures of his person and property, including the right to be detained, or have his property taken, without probable cause or reasonable or articulable suspicion.

45. During the events described herein, certain Supervisory Personnel, agents or employees of the Village of University Park with policy-making authority, whose names and titles are presently unknown to plaintiff, had a duty to supervise and set policy and standards for the use of force, and procedures and standards concerning arrests, as well as to hire, discipline, and fire

University Park Police Officers.

46. This individual or these individuals failed to adequately supervise, train, or set policy to prevent violations of the plaintiffs' constitutional rights. These individuals encouraged the violation of plaintiff's rights in that they failed to insure that officers did not detain or hold individuals in custody who had not committed, nor were believed to have committed, any criminal act, and encouraged the violation of plaintiff's constitutional rights in that they failed to insure that property was seized from individuals without probable cause or reasonable or articulable suspicion.

47. These individuals failed to adequately supervise, train, or set policy to prevent violations of the plaintiffs' constitutional rights in that these individuals tolerated the violations of the civil rights of the plaintiff – and others - at the hands of Officers Kinnan, Whitaker, and Jones and did nothing to correct, train, discipline, or otherwise relieve Defendants of authority or duties involving the detention of individuals or the seizure of their property, until plaintiff had been injured thereby.

48. These individuals failed to adequately or properly respond to the complaints regarding the conduct of Officers Kinnan, Whitaker, and Jones.

49. As a result of the individual or individuals failure to properly discipline or investigate officers, including specifically Officers Kinnan, Whitaker, and Jones, University Park police officers, including specifically defendants, were encouraged and led to believe that their improper and unconstitutional conduct would not be scrutinized or punished. These failures created an informal policy or custom which resulted in the violations of the plaintiffs rights alleged herein.

50. This complete failure to address, discipline, or respond in any way to the continued

unconstitutional actions of Officers Kinnan, Whitaker, and Jones, committed on both the plaintiff and to other individuals, was the proximate cause of the violations of plaintiff's constitutional rights resulting from defendants' actions in August 2010.

51. The supervisory failures of these individuals and unknown supervisory officers were the direct and proximate cause of the constitutional violations visited on the plaintiffs.

52. As the proximate result of these individuals failure to supervise or otherwise set or enforce policy and procedures, or properly train the defendant officers, the defendant Village failed to prevent and in fact encouraged and caused the unlawful detention and seizure of the plaintiff and his property.

53. Prior to August 2010 through the actions and inactions of its policy-making personnel, the Village of University Park developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons in University Park, which proximately caused the violation of Plaintiff's rights.

54. It was the policy and/or custom of the Village of University Park and its officers to inadequately and improperly investigate or resolve complaints of police misconduct relating to the unlawful detention and seizure of property, and such acts of misconduct were instead tolerated by the Village of University Park.

55. It was the policy and/or custom of the Village of University Park to inadequately supervise and train its police officers, including the Defendant officers, thereby failing to adequately discourage further constitutional violations on the part of its police officers. The City did not require appropriate in-service training or re-training of officers regarding unlawful detentions or seizures of property

56. As a result of the above described policies and customs, police officers of the Village of

University Park, including the Defendant officers, believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

57. The Village of University Park failed to train and supervise its officers, and failed to implement policies, to prevent constitutional violations relating to the improper and unlawful detention of individuals and the seizure of their property.

58. The Village of University Park failed to monitor and supervise its officers regarding the detaining individuals, and seizing their property, and failed to make reasonable regular inquiries into, or otherwise determine whether such conduct was occurring during encounters with citizens, and failed to take reasonable steps to prevent its officers from such violations.

59. The above described policies and customs demonstrated a deliberate indifference on the part of policymakers of the Village of University Park to the constitutional rights of persons within the Village, and were the proximate cause of the violations of Plaintiff's rights alleged herein. As a direct and proximate result of the municipality's failures and actions, plaintiff suffered improper detention, had his property interest interfered with, and suffered mental anguish, emotional distress, and legal expenses, as alleged herein.

WHEREFORE the Plaintiff demands judgment against the Defendant, Village of University Park, for compensatory damages, costs incurred herein and attorney fees in a sum in excess of $ 20,000.00.

PLAINTIFF DEMANDS TRIAL BY JURY

Respectfully submitted by:
By: /s/ John C. Greenlees
ARDC No. 6196135
600 Holiday Plaza Drive, Suite 500
Matteson, IL 60443
708 747 9440    708 747 9445 facsimile